UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARTIN ALCOSER** | **CIVIL ACTION** |
| **VERSUS** | **NO-12-2689-KDE-SS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY** | |

## REPORT AND RECOMMENDATION

The plaintiff, Martin Jose Alcoser ("Alcoser"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") ceasing his disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 423.

## HISTORY

On December 22, 1997, an Administrative Law Judge ("ALJ"), found that Alcoser was disabled as of December 23, 1996 for a period of disability, disability insurance benefits and supplemental security income benefits on the grounds that he had a left arm impairment that satisfied the severity criteria of Section 1.12 of the Listing of Impairments. R. 13.

On April 29, 2005, an ALJ determined that Alcoser's disability continued. While there was medical improvement since December 22, 1997, Alcoser's residual functional capacity did not allow for his ability to perform work on a sustained basis given his diminished use of his left arm and hand and complaints of dizziness and headaches. R. 13.

On January 9, 2009, two investigators with the Cooperative Disability Investigations Unit went to the residence of Alcoser and Lawrence Hallaron.[1] The investigators reported that, "[n]either Hallaron nor Alcoser appeared to have any physical limitations nor did they give any indication of having any mental deficiencies."  R. 97.

On July 1, 2009, it was determined that Alcoser was no longer disabled as of September 1, 2009 on the grounds of fraud and insufficient evidence to determine whether he had any physical or mental condition that would continue to satisfy the disability criteria.  R. 13.

On July 6, 2009, the investigators observed Hallaron in a wheelchair being pushed by Alcoser.

> Alcoser pushed claimant [Hallaron] to a white 2001 Chevrolet Suburban. . . . Alcoser lifted the rear door of the Suburban. . . . Hallaron stood up from the chair without assistance and folded the portable chair, assisted by Alcoser.  Hallaron and Alcoser lifted the chair and placed it in the rear of the Suburban. . . . Alcoser did not display any physical problems while pushing Hallaron.

R. 97-98.  A few minutes later, the investigators approached the vehicle, while Hallaron was in an office.  On the pretext of asking directions, the investigators went up to the vehicle and spoke to Alcoser and the driver.  Alcoser gave appropriate answers to the questions.  R. 98.

On July 10, 2009, Alcoser arrived at the office of Mordecai N. Potash, M.D., at Tulane University Hospital in a wheel chair.  Dr. Potash found Alcoser sitting in the wheelchair.  Hallaron was seated next to him.  Hallaron had been discharged from Dr. Potash's practice and other practices at Tulane over his pain management needs.  Hallaron told Dr. Potash that he was Alcoser's caregiver.  Dr. Potash told them he could not treat Alcoser because of the issues with Halloran.

---

[1] On August 13, 2013, a judgment was entered dismissing with prejudice the complaint of Lawrence Hallaron, III.  See Hallaron v. Carolyn W. Colvin, Acting Commissioner of Social Security, CA 12-2051-SSV (Rec. doc. 13).  Hallaron complained of an August 25, 2011 decision which adversely affected him.  Rec. doc. 1.

> At that point, Martin started cursing saying "I knew this was bullshit, I told you of bullshit" and he got out of his chair and start walking around, which I found unusual, given that he came in on a wheelchair. After some more discussion, I reiterated that I would not be treating Martin and then Lawrence said something very unusual. He said "you know I am going to be coming back to see you, Dr. Potash" and at that point, I reiterated that he had been discharged from my practice and I told him that the best thing would be for us to cease the appointment and not have any more communication today.

R. 230.

On June 24, 2010, the SSA notified Alcoser that his disability ended in July, 2009. R. 44-49.

On March 16, 2011, there was a disability hearing where Alcoser was present. R. 69. He did not speak much. Hallaron described Alcoser's alleged physical and mental condition. He said the allegations of fraud were false R. 70. The hearing officer noted that the Act's fraud sections provide that evidence of disability shall be disregarded if there is reason to believe that fraud was involved. R. 72.

On April 8, 2011, the Disability Hearing Officer determined that Alcoser was not disabled. R. 63-68. He stated that: (1) because of Alcoser's suspected fraud, there was insufficient evidence to determine if he had a physical or mental condition that would meet any listing (R. 63); (2) because of his suspected fraud, no current medically determinable impairment could be made and no valid comparison could be made to determine if medical improvement had occurred (R. 64); (3) by committing fraud, his medical improvement was not an issue (R. 65); (4) while there was medical evidence of a severe impairment, certain evidence must be disregarded per the Social Security fraud policy (R. 65); (5) the medical improvement standard did not apply due to the fraud exception (R. 65); and (6) because he did not have a proven severe physical or mental impairment, disability benefits could not be continued (R. 65).

On January 6, 2012, there was a hearing before an ALJ. R. 574-614. Present were Alcoser,

his counsel, Hallaron and a vocational expert. R. 574-7.

Alcoser testified that his disability began when he became ill with seizures when he worked at Schwegmann's in the 1990's. R. 581. He was present at the hearing in a wheelchair. He did not recall who prescribed it or when it was prescribed. R. 581. He saw his doctors about every three months. R. 583. He was taking medication. R. 583.[2]

Alcoser did not recall seeing doctors at Tulane. R. 584. He used the wheelchair at home and when he went out to see doctors. R. 584. He needed it to get around. R. 584. After Hurricane Katrina, a doctor told him to walk for physical therapy. R. 585. He could not recall the name of the doctor. R. 585. He was able to walk just a few feet. R. 585-86. He could not recall the last time he walked. R. 586. He was driven to the hearing. R. 587.

In July 2009, it was recommended that he have a repair to or amputate his left arm. He refused the procedure. R. 587. Alcoser had a L4/S1 fusion in December 2010. R.587.

In 1995 or 1996, Alcoser was diagnosed with narcolepsy and epilepsy. R. 588. Alcoser's counsel reported that Alcoser's neurologist stated that he should not be left alone. If Alcoser's seizures lasted more than 3 to 5 minutes, the caregivers were to seek medical attention. R. 589. Alcoser had both grand mal and petit mal seizures. R. 589.

The ALJ described the July 10, 2009 report by Dr. Potash, where Alcoser removed himself from his wheelchair and started stalking around the room. Alcoser's counsel was unable to explain how this was consistent with his confinement to a wheelchair. R. 590. Alcoser did not respond when asked to explain it. R. 591. He could not recall going to Tulane in July 2009, being denied medications, becoming upset, getting out of his wheelchair and walking around. R. 591.

---

[2] See R. 178 for list of Alcoser's medications.

In response to his attorney's questioning, Alcoser could not recall using a walker at his home. R. 591. When Alcoser met with his doctors, Hallaron spoke for him. R. 592. There was no one in Alcoser's household who knew his condition other than Hallaron. R. 592.

During a normal day, Alcoser slept, took his medication and watched television. R. 593.

The ALJ read portions of the Report of Investigation (R. 94-98). Alcoser asked his attorney what the ALJ was talking about. R. 595-95. Alcoser's attorney summarized what the ALJ was saying. R. 595. Alcoser said he was totally confused. R. 595.

The ALJ stated that he had trouble with Alcoser's allegations of his limitations and the reports by Dr. Potash and the investigators. R. 596. While she recognized the duty to her client, Alcoser's counsel had the same problem. R. 596. The ALJ recessed for five minutes to permit Alcoser and his counsel to confer. R. 597.

After the recess, Hallaron testified. He had known Alcoser for 17 years. R. 597. They were friends and not related. R. 597. Hallaron believed Alcoser was disabled because: (1) there was an unsuccessful back operation in July 2009; (2) his narco-epileptic seizures were uncontrollable; and (3) his bones were diseased. R. 599-600. Alcoser's medications were described by Hallaron. R. 600-601.

As for the July 2009 visit to Tulane and Dr. Potash, Hallaron reported that Dr. Potash was unable to treat Alcoser because Dr. Potash had treated Hallaron. R. 602. When pressed by the ALJ about the incident, Hallaron stated that it had been recommended that Alcoser ambulate as much as possible but there were times when he could not. Alcoser was in a wheelchair at the hearing because he had a tendency to pass out and fall. Because of the hearing, his seizure activity had increased. At times he had the mind of a five year old. R. 603.

Hallaron described Alcoser's back surgery in 2010 as unsuccessful. R. 604. He reported that doctors do not like to treat patients like Alcoser because they do not like losing a patient. Hallaron did not want to see Alcoser go into a nursing home. R. 605.

Hallaron reported that in a normal day, Alcoser slept a lot and watched television. R. 606. On a good day, Alcoser would be without pain for about 20 minutes. R. 606. He had chronic constipation. R. 606. Hallaron made sure that when Alcoser ambulated that he had assistance. R. 608. He required assistance with clothing, feeding, showering, bathing, washing and grooming his hair. R. 610.

At the hearing, Alcoser wore sunglasses. R. 610. He was allergic to radiation in fluorescent lights. R. 610. The ALJ asked Alcoser to obtain a report from Dr. Olejniczak detailing specific limitations. R. 611. The ALJ gave Alcoser 30 days to supplement the record. R. 612.[3]

In response to the hypothetical question from Alcoser's attorney, the vocational expert reported that there were no jobs that could be performed. R. 613.

On March 15, 2012, the ALJ issued an unfavorable decision. R. 10-24. On September 21, 2012, the Appeals Council denied the request for review. R. 6-9. On November 6, 2012, Alcoser filed a complaint in federal court. Rec. doc. 1. The parties filed cross-motions for summary judgment. Rec. docs. 12-13.

## STATEMENT OF ISSUES ON APPEAL

**Issue no. 1.**    Did the ALJ find that Alcoser committed fraud and, if so, is there substantial evidence for the ALJ's finding?

**Issue no. 2**.    The ALJ's evaluation of Alcoser's residual functional capacity.

---

[3] On January 30, 2012, Dr. Piotr Olejniczak wrote that Alcoser's seizures may be photosensitive, they were not well controlled and were potentially disabling. R. 564.

**Issue no. 3**.     The ALJ's decision not to make a medical improvement finding.

**Issue no. 4**.     The ALJ's response to Alcoser's lost prior file.

**Issue no. 5**.     The ALJ's evaluation of the treating physician's opinions.

### THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. The most recent favorable medical decision finding that Alcoser continued to be disabled is the determination dated April 29, 2005. This is the Comparison Point Decision ("CPD").

2. At the time of the CPD, Alcoser had the following medically determinable impairments: status post left arm resection with limitation of functioning of the left arm/hand, headaches, depression and anxiety. The left arm impairment originally found to have met the criteria of Listing 1.12 was noted to have "improved" per the ALJ's decision of April 29, 2005. Alcoser was found to have the new impairments of severely restricted use of the left arm/hand, headaches, depression and anxiety. The totality of these impairments prevented the performance of sustained work activity on an 8-hour day, 40-hours a week basis such that there was no other work that Alcoser could perform (20 C.F.R. §§ 505.1520(d) and 416.920 (d)).

3. As of September 1, 2009, the date that Alcoser's disability ended, he had not engaged in substantial gainful activity (20 C.F.R. § 404.1594 (f)(1)).

4. The medical evidence established that Alcoser did not develop any additional impairments after the CPD through September 1, 2009.

5. Since September 1, 2009, Alcoser has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 414.1526, 416.925 and 416.926).

6. Alcoser was suspected of fraud reported during his medical examination at Tulane University Hospital and Clinic on July 10, 2009, consequently the issue of "medical improvement" is not applicable, as fraud, failure to cooperate and follow prescribed treatment can result in determination that one is no longer disabled, as provided for by the second group of exceptions to the "medical improvement" analysis (20 C.F.R. §§ 404.1594(d)(5)(e)(1-4) and 416.994(b)(4)(i-iv); R. 230-31).

7. As of September 1, 2009, Alcoser no longer had an impairment or combination of impairments that met or medically equaled the same listing that was equaled at the time of the CPD (20 C.F.R. §§ 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).

8.   Beginning on September 1, 2009, Alcoser's impairments had continued to be severe (20 C.F.R. §§ 404.1594(f)(6) and 416.994(b)(5)(v); <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985)).

9.   Beginning on September 1, 2009, Alcoser had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

10.  Beginning on September 1, 2009, Alcoser had no past work experience to consider (20 C.F.R. §§ 404.1565 and 416.965).

11.  On September 1, 2009, Alcoser was a younger individual age 18-49 (20 C.F.R. §§ 404.1563 and 416.963).

12.  Alcoser has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

13.  Transferability of job skills is not an issue in this case because Alcoser has no past work experience to consider (20 C.F.R. §§ 404.1568 and 416.968).

14.  Beginning on September 1, 2009, considering Alcoser's age, education, work experience, and residual functional capacity, Alcoser has been able to perform a significant number of jobs in the national economy (20 C.F.R. 404.1560(c), 404.1566, 416.960(c) and 416.966).

15.  Alcoser's disability ended on September 1, 2009, and he has not become disabled again since that date (20 C.F.R. §§ 404.1594(f)(8) and 416.994(b)(5)(vii)).

R. 15-23.

## ANALYSIS

a.   **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005); <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

For disability cessation claims under Title II, the regulations require the Commissioner to apply an eight-step process: 1) whether the claimant is performing substantial gainful activity; 2) whether the impairment meets or equals a listed impairment; 3) whether medical improvement has occurred; 4) whether the medical improvement is related to the ability to work; 5) whether an exception to medical improvement applies; 6) whether the claimant's impairments in combination are severe; 7) whether the impairment prevents the claimant from performing past relevant work; and (8) whether the impairment prevents claimant from doing any other work. 20 C.F.R. § 404.1594(f). For Title XVI, disability cessation cases follow a seven-step process identical to steps two through eight, above. 20 C.F.R. 416.994(b)(5).

**b**.     **Plaintiff's Appeal.**

**Issue no. 1.**     Did the ALJ find that Alcoser committed fraud and, if so, is there substantial evidence for the ALJ's finding?

On April 8, 2011, the Disability Hearing Officer determined that Alcoser was not disabled. R. 63-68. The officer determined that the medical improvement standard did not apply due to the fraud exception. R. 65. Alcoser disagreed with the determination and requested review by an ALJ. R. 77-79.

The ALJ found that Alcoser was suspected of fraud reported during his medical examination by Dr. Potash at Tulane on July 10, 2009. As a result, the ALJ determined that the issue of "medical improvement" was not applicable, as fraud can result in determination that one is no longer disabled, as provided for by the second group of exceptions to the "medical improvement" analysis. 20 C.F.R. §§ 404.1594(d)(5) and (e)(1-4) and 416.994(b)(4)(i-iv).

Section 404.1594 provides the regulations on how the Commissioner will determine whether a person's disability continues or ends. The Commissioner must determine if there has been any medical improvement in the person's impairments. Section 404.1594(a). There are two groups of exceptions to medical improvement. Section 404.1594(d) and (e). For the second group of exceptions, the decision will be made without a determination that the person has medically improved or can engage in substantial gainful activity. Section 404.1594(e). One of the second group exceptions provides that "[i]f we find that any prior favorable determination or decision was obtained by fraud, we may find that you are not disabled." Section 404.1594(e)(1).

Alcoser contends that the ALJ did not find that the April 29, 2005 decision was obtained by fraud. Instead he urges that the ALJ only found that he was suspected of fraud and suspicion of fraud is insufficient to invoke the second group of exceptions. The Commissioner responds that

10

although the ALJ did not quote the precise regulatory language, it is clear he determined that Alcoser misrepresented his condition to the agency in order to collect benefits. R. 16-17. The Commissioner urges that a case will not be remanded simply because the ALJ did not use "magic words" (Hampton v. Bowen, 785 F.2d 1308, 1311 (5th Cir. 1986)) and that an ALJ is not required to follow formalistic rules in his articulation of the reasons for his decision (Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). See Hernandez v. Astrue, 278 F.App'x 333, 339 (5th Cir. 2008) (ALJ not required to follow formalistic rules).

The ALJ thoroughly described the reports of Dr. Potash and the Disability Investigations Unit. R. 16. The Court agrees with the Commissioner that it is clear that the ALJ determined that Alcoser misrepresented his condition in order to collect benefits.

Assuming that the ALJ made a finding of fraud, Alcoser contends that the fraud exception is inapplicable because evidence from 2009 cannot establish that fraud was committed in 2005. The Commissioner responds that Alcoser's 2009 conduct raises a reasonable inference that he committed fraud during the 2005 continuing disability review. The Commissioner cites Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008), where the ALJ was permitted to draw reasonable inferences. Alcoser's acts in 2009 raise a reasonable inference that fraud was committed in 2005.

On January 9, 2009, the investigators from the Cooperative Disability Investigations Unit went to Alcoser's residence. They observed Alcoser and Hallaron. They concluded that neither appeared to have any physical limitations nor did they give any indication of having any mental deficiencies. R. 97. On July 6, 2009, the investigators observed Hallaron and Alcoser. Alcoser pushed Hallaron in a wheelchair. Alcoser lifted the door of the Suburban. Hallaron got out of the wheelchair. The two of them folded it, lifted it, and placed in the rear of the Suburban. R. 98.

On July 10, 2009, Alcoser and Halloran went to the office of Dr. Potash, but this time Alcoser was in the wheelchair. When Dr. Potash refused to treat him, Alcoser got up from the wheelchair, began cursing and walking around.

There is substantial evidence to support the ALJ's finding of fraud.

**Issue no. 2**. The ALJ's evaluation of Alcoser's residual functional capacity.

Alcoser contends that the RFC assessment was not based on limitations caused by his impairments because the ALJ incorrectly disregarded medical evidence due to suspicion of fraud, when the Regulations prohibit disregarding of evidence due to mere suspicion of fraud. The Commissioner responds that Alcoser's RFC is irrelevant to the resolution of this claim because he committed fraud. Pursuant to 20 C.F.R. § 404.1594(e), where there is a finding that a prior determination or decision was fraudulently obtained, "the decision will be made without a determination that you . . . can engage in substantial gainful activity." Id. Alcoser's RFC is irrelevant.

Alcoser argues that questions identified in the Hearing, Appeals and Litigation Law Manual ("HALLEX") are applicable and prevent the ALJ from disregarding objective medical evidence supporting Alcoser's impairments and limitations.[4] The Commissioner responds that the provisions cited by Alcoser do not address the situation where a person has obtained a favorable decision and receives benefits as a result of fraud. In such circumstances, HALLEX provides guidance for use in cessation cases which is consistent with the Commissioner's position and the regulations. 20

---

[4] Alcoser cites from HALLEX, Part I-5-1-15 - Processing Cases Involving Potential Fraud, Similar Fault, and Abuse Issues and the responses to Questions 10, 12, 14, 33, 38, and 39. See www.ssa.gov/OP_Home/hallex/.

C.F.R. § 404.1594(e).[5]

**Issue no. 3**.	The ALJ's decision not to make a medical improvement finding.

Alcoser contends that the ALJ did not make a requisite medical improvement finding because he incorrectly concluded a suspicion of current fraud made the fraud exception to medical improvement applicable, when that exception requires a finding that a prior favorable decision was obtained by fraud. The Commissioner responds that the ALJ was not required to make a medical improvement finding because the evidence demonstrates that Alcoser committed fraud. Pursuant to 20 C.F.R. § 404.1594(e), where there is a finding that a prior determination or decision was fraudulently obtained, "the decision will be made without a determination that you have medically improved. . . ." Id. The ALJ was not required to make a medical improvement finding.

**Issue no. 4**.	The ALJ's response to Alcoser's lost prior file.

Alcoser contends that his disability must be found to continue because the Social Security Administration lost his prior file, a circumstance in which Regulations prohibit a finding of medical improvement and require a finding of continuing disability. The Commissioner responds that Alcoser's file is irrelevant to this claim because the ALJ determined that he committed fraud.

The regulations provide additional factors which the Commissioner will apply in making the determination that a disability continues or ends. One of these is whether the prior file cannot be located. 20 C.F.R. § 404.1594(c)(3)(v). "If the prior file cannot be located . . .[and] [i]f you cannot engage in substantial gainful activity, your benefits will continue <u>unless</u> one of the second group of exceptions applies. . ." Id. (emphasis added). One of the second group of exceptions (a prior determination or decision was fraudulently obtained) does apply, so the lost prior file is irrelevant.

---

[5] See HALLEX, Part I-2-2-98 - Sample Language Which May be Appropriate in the Notice of Hearing - Cessation Cases - Adult Cases.

**Issue no. 5**.    The ALJ's evaluation of the treating physician's opinions.

Alcoser contends that the ALJ failed to accord requisite weight to opinions of his treating physicians. The Commissioner responds that the opinions of the treating physicians are irrelevant because Alcoser committed fraud.

Because of the finding of fraud, the ALJ was not required to make a medical improvement finding. Supra at 13 and 20 C.F.R. § 404.1594(e)(1). Inasmuch as medical improvement is not an issue, the ALJ's evaluation of the treating physician's opinions is irrelevant.

For the same reason there is no need for a detailed review and summary of Alcoser's medical records as is usually found in a report and recommendation concerning the Commissioner's denial of benefits.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED the cross-motion of the defendant, Carolyn W. Colvin, Acting Commissioner of Social Security Administration, for summary judgment (Rec. doc. 13) be GRANTED and the motion of the plaintiff, Martin J. Alcoser, for summary judgment (Rec. doc. 12) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 17th day of September, 2013.

                                                              **SALLY SHUSHAN**
                                                **United States Magistrate Judge**